# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **LABIB CHAMMAS**, <br> Defendant. | Case No. 16-cr-00171 (CRC) |

## MEMORANDUM OPINION

In October 2016, Labib Chammas pleaded guilty to abusive sexual contact in violation of 18 U.S.C. § 2244(a)(2). The Court subsequently sentenced Chammas to a term of 30 months of incarceration followed by five years of supervised release. Currently before the Court is Chammas's *pro se* motion to vacate both his conviction and sentence pursuant to 28 U.S.C. § 2255. Chammas asserts that he was denied the effective assistance of counsel at both the plea and sentencing stages of his prosecution. In addition, he requests that his § 2255 petition be assigned to a different judge than the undersigned "to avoid any and all potential biases that may exist," suggesting the Court will not impartially review the petition because it is familiar with the counsel Chammas now claims was ineffective. Because there is no basis for Chammas's assertions of judicial bias, the Court will decline that request. And, with the exception of one issue as to which the Court will reserve judgment pending the submission of additional evidence by the government, the Court will also deny Chammas's § 2255 motion for relief from his conviction and sentence.

## I. Background

Chammas and his wife, the former Deputy Chief of Mission ("DCM") for the State Department in Rabat, Morocco, lived at the DCM residence from August 2010 to February 2013.

Statement of the Offense at 49.[1]  During that period, Chammas was responsible for managing the household and staff.  Id. at 50.  According to employees, Chammas "was an abusive head-of-household" who frequently yelled at them and threatened to fire them.  Id.  In February 2013, during a routine inspection of the U.S. Embassy, the State Department's Office of the Inspector General ("OIG") received an anonymous letter reporting that Chammas was sexually abusing a female cook employed at the DCM residence.  Aff. in Supp. of Crim. Compl. and Arrest Warrant ("Affidavit") at 10.

OIG inspectors interviewed Chammas on February 13 and 14, 2013.  See Mem. of Interview of Labib Chammas ("Chammas MOI"), Feb. 13, 2013 at 31–33; Chammas MOI, Feb. 14, 2013 at 34–37.  Chammas acknowledged having sexual contact with the victim during massages, admitted ejaculating during those massages, and conceded that his penis came into contact with the victim's face on at least one occasion.  Id.  The government executed a search warrant of the DCM residence, collected potential biological evidence, obtained a warrant for Chammas's DNA, and determined that the DNA evidence was consistent with the victim's account.  Affidavit at 19–20.  In the course of the government's investigation into the reports of abuse, the government also initiated a second investigation into possible forced-labor practices at the DCM residence.  Sentencing Hr'g at 165–66.

While the investigations were ongoing, Chammas traveled to Lebanon with his wife in April 2015.  Mot., ECF 33, ¶ 29.  His wife returned to the United States a month later, but Chammas went to Syria ostensibly to resolve certain family and employment issues.  Id.

---

[1] Unless otherwise noted by docket number, the documents cited in this memorandum opinion are those attached to the government's opposition, see Opp'n, ECF No. 38, and are referred to by title and Bates stamp number.

Chammas left Syria and returned to the United States in May 2016. Id. While Chammas was abroad, the government decided to seek a warrant for his arrest. Sentencing Hr'g at 166–67. Soon after he returned from more than a year overseas, Chammas was arrested at his home on May 19, 2016 and charged by complaint with aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1). That offense carries a maximum penalty of life imprisonment.

In October 2016, Chammas pleaded guilty to a lesser charge of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(2). Plea Agreement at 38. As part of the plea agreement, the parties agreed that the Statement of Offense, which Chammas signed, fairly and accurately set forth his offense conduct. Id. at 39. According to the Statement, Chammas began asking the victim for massages soon after moving into the DCM residence. During the course of these massages, Chammas demanded that she massage his penis with her hands; the victim complied out of fear that she would be fired otherwise. Statement of Offense at 49–50. In addition, on at least five occasions between August 2010 and February 2013, Chammas attempted to insert his penis into the victim's mouth against her will by pulling or attempting to pull her head toward his penis. Id. at 50. In each instance, the victim closed her mouth and turned her face to the side. Id.

Based on the conduct described in the Statement, the parties also agreed that Chammas's conduct supported an increase to his offense level calculation under the Sentencing Guidelines because his conduct involved the use of force in violation of 18 U.S.C. § 2241(a). Plea Agreement at 39. In addition, because the Guidelines range for Chammas's offense conduct exceeded the three-year maximum statutory penalty for abusive sexual contact, the parties agreed that a Guidelines-compliant sentence would be 36 months. Id. at 40 n.1. Finally, the parties

3

agreed that Chammas would not seek a sentence of less than one year and a day of incarceration. Id. at 41.

After the plea, the Court granted defense counsel's request that Chammas remain on release pending sentencing based on Chammas's age (65 at the time) and various medical conditions. See Oct. 24, 2016 Minute Order. At the sentencing hearing on January 4, 2016, the Court reviewed the 18 U.S.C. § 3553 factors and imposed a below-Guidelines sentence of 30 months of incarceration followed by five years of supervised release. See Sentencing Hr'g at 176–78.

On January 2, 2018, Chammas filed a § 2255 motion seeking relief based on seven instances of alleged ineffective assistance of counsel. See Mot. On May 30, 2018, he filed a supplement to his § 2255 motion which asserts an additional claim of ineffective assistance. See Suppl. Mot., ECF No. 39.

## II. Analysis

### A. Recusal or reassignment

Before reaching the substance of Chammas's § 2255 motion, the Court will address his request that the motion be reassigned to a different judge in order to "avoid any and all potential biases that may exist" because of the Court's alleged familiarity with defense counsel. Mot. ¶ 93. "Recusal is required under 28 U.S.C. § 455 if 'a reasonable and informed observer would question the judge's impartiality,'" United States v. Williamson, 903 F.3d 124, 137 (D.C. Cir. 2018) (quoting SEC v. Loving Spirit Found. Inc., 392. F.3d 486, 493 (D.C. Cir. 2004)), and "under 28 U.S.C. § 144 if a judge 'has a personal bias or prejudice' either against or in favor of a party," id. (quoting § 144). Chammas alleges no credible basis for recusal under either section. First, he suggests the Court demonstrated favoritism by commenting at sentencing that defense

counsel had "done a terrific job." Mot. ¶ 93 (citing Sentencing Hr'g at 177:13). Chammas offers no authority for the proposition that complimenting an attorney for high-quality advocacy provides a basis for recusal in a future proceeding. And in any event, Chammas ignores the rest of the Court's comment, which was to thank counsel for *both parties* and say the "submissions have been excellent" on both sides. Sentencing Hr'g at 177:15–16. Second, he suggests that the Court could be biased because of defense counsel's purported friendship with the Court's wife. Mot. ¶ 93.[2] But even if the two are friends, no reasonable observer would conclude that such friendship alone overcomes the strong presumption of impartiality afforded to the Court. The Court will therefore deny Chammas's request for reassignment of his § 2255 motion.

B. Section 2255 relief

Moving to the merits, a prisoner serving a federal sentence may petition the court to vacate his sentence if he believes that it "was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). The petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence his right to relief. United States v. Simpson, 475 F.2d 934, 935 (D.C. Cir. 1973) (per curiam).

Chammas seeks to vacate his conviction and sentence on the basis that he received ineffective assistance of counsel in violation of the Sixth Amendment. "The Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'" Buck v. Davis, 137 S. Ct. 759, 775 (2017) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)). To prevail, Chammas bears the burden of showing first "that counsel's performance was deficient" and

---

[2] In fact, defense counsel and the Court's wife were colleagues in the U.S. Attorney's Office for the District of Columbia over a decade ago. They remain professional acquaintances but are not close personal friends.

5

second "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "The two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985).

Under the first prong of the Strickland test, Chammas must prove that counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687–88. This "sets a high bar," Buck, 137 S. Ct. at 775: "Judicial scrutiny of counsel's performance must be highly deferential" in light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689. And although "even an isolated error" can support an ineffective-assistance claim if it is "sufficiently egregious," Murray v. Carrier, 477 U.S. 478, 496 (1986), "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy," Harrington v. Richter, 562 U.S. 86, 111 (2011).

Under the second prong of the Strickland test, Chammas must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. For Chammas's claims regarding the plea-agreement phase, prejudice means "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 58–59. And for Chammas's claims regarding the sentencing phase, prejudice means a reasonable likelihood that but for counsel's errors, he "would have received a lower sentence." United States v. Wilkins, 734 F. App'x 1, 2 (D.C. Cir. 2018) (citing Glover v. United States, 531 U.S. 198, 203–04 (2001)).

Chammas asserts eight independent grounds for his ineffective-assistance claim. Because the record discloses no Sixth Amendment violation on any of these grounds, the Court

6

will deny Chammas's § 2255 petition, except as to the claim discussed in Subsection 6 below. And because, as will follow, "the motion and the files and records of the case conclusively show that [Chammas] is entitled to no relief," the Court will also deny Chammas's request for an evidentiary hearing. 28 U.S.C. § 2255(b); United States v. Gooch, 842 F.3d 1274, 1280 n.3 (D.C. Cir. 2016).

### 1. Failure to investigate prior to Chammas's plea

First, Chammas claims that counsel performed deficiently because he did not interview potential witnesses directly, identify potential alibi witnesses, or investigate the anonymous tipster and uncover potential impeachment information about them. Mot. ¶¶ 9–10, 24–26.

"Where the case involves a failure to investigate, the 'particular decision not to investigate must be directly assessed for reasonableness in all of the circumstances, applying a heavy measure of deference to counsel's judgments.'" United States v. McDade, 699 F.3d 499, 506 (D.C. Cir. 2012) (quoting Strickland, 466 U.S. at 691). And where, as here, "the record does not explicitly disclose . . . counsel's actual strategy or lack thereof . . . , the presumption [of adequate performance] may only be rebutted through a showing that no sound strategy . . . could have supported the conduct." United States v. Abney, 812 F.3d 1079, 1087 (D.C. Cir. 2016) (citation and internal quotation marks omitted) (first two alterations in original). Chammas fails to show that no sound strategy could have supported his counsel's decision to forego these lines of investigation. As such, the Court concludes that counsel's conduct was not "outside the wide range of professionally competent assistance" under the circumstances in this case. Strickland, 466 U.S. at 690.

The defense received voluminous discovery materials from the government months before Chammas entered his plea in October 2016. See July 15, 2016 Discovery Letter at 23–24.

7

These materials included the anonymous letter, the results of the search warrant, and memoranda of interviews with numerous witnesses, the victim, and Chammas himself.  See Index to Gov't Prod., July 15, 2016 at 25–30.  Chammas voluntarily met with investigators on February 13 and 14, 2013.  See Chammas MOI Feb. 13, 2013 at 31–33; Chammas MOI, Feb. 14, 2013 at 34–37.  During those interviews, Chammas admitted having sexual contact with the victim during massages, admitted ejaculating during those massages, and admitted that his penis came into contact with the victim's face on at least one occasion.  Id.  While Chammas speculates that counsel should have ascertained certain background information that he details in his motion, see Mot. ¶¶ 11–25, he reported similar information about workplace problems to the investigators during these interviews.  In addition, Chammas provided a DNA sample for forensic testing, which corroborated the victim's account of sexual contact.  See Affidavit at 10 ¶¶ 26–28.  Counsel received the results of that DNA testing on September 10, 2014.  See Sept. 10, 2014 Gov't Prod., ECF No. 48, at 46.  Given these circumstances, counsel likely made the reasonable strategic decision that investigation into alibi witnesses or the anonymous tipster would not have proved fruitful.

Furthermore, even if Chammas could show that counsel was deficient, he must still demonstrate prejudice.  To do so, Chammas "must make a 'comprehensive showing as to what [information] the investigation would have produced,' and how this information 'would have produced a different result.'"  United States v. Bertram, 209 F. Supp. 3d 243, 256 (D.D.C. 2016) (alteration in original) (quoting United States v. Askew, 88 F.3d 1065, 1073 (D.C. Cir. 1996)).  Again, although Chammas speculates what evidence counsel could have developed, Mot. ¶¶ 11–25, counsel already had access to much of that evidence.  And critically, Chammas does not explain how this evidence would have produced a different result.  This does not seem like a case

in which an alibi witness or impeached tipster would have made a difference; Chammas voluntarily admitted having sexual contact with the victim and provided DNA evidence that verified her account. Accordingly, the Court concludes that there is no reasonable probability that had counsel conducted further investigation, Chammas would not have pleaded guilty and insisted on going to trial. See Hill, 474 U.S. at 58–59.

Because Chammas demonstrates neither deficient performance nor prejudice, the Court denies the § 2255 motion with respect to the failure to investigate claim.

### 2. Failure to keep abreast of the investigation status

Next, Chammas argues that counsel performed deficiently by failing to stay informed of the status of the criminal investigation. Chammas's complaint here largely turns on his surprise when the FBI showed up at his home to arrest him ten days after he returned from more than a year of travel overseas. Mot. ¶¶ 29–32. He claims that he traveled overseas only based on counsel's assurances that there was no "pending case" against him and that his overseas travel is what led the FBI to arrest him. Id. ¶¶ 28–29, 32–33. The government confirms that "it was defendant's failure to return as planned with his wife from their trip to Lebanon . . . and his decision to take an unplanned trip to Syria, where he remained for over a year, that resulted in the circumstances of his arrest." Opp'n at 31 n.10.

The government argues that Chammas is barred from raising alleged deficiencies such as this "failure to keep abreast" because it has no bearing on the advice his counsel provided related to the plea. Id. at 31. The Court agrees. When "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). This is not to say

9

that a defendant who pleaded guilty cannot raise later any Sixth Amendment claims; rather, he "'may only attack the voluntary and intelligent character of the guilty plea' 'through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases.'" United States v. Graves, 561 F. App'x 1, 3 (D.C. Cir. 2014) (first quoting Tollett, 411 U.S. at 267; then quoting Blackledge v. Perry, 417 U.S. 21, 30 (1974)). Chammas fails to explain how counsel's alleged failure to warn him about the possibility of arrest rendered his plea not knowing or voluntary. Accordingly, the Court will deny his § 2255 motion with respect to this claim as well.

### 3. *Misleading advice related to potential prosecution of Chammas's wife*

Third, Chammas asserts that he was "misled by his counsel regarding the threatened prosecution of his wife." Mot. ¶ 39. He claims that counsel first learned in May 2016 that the government did not intend to prosecute his wife for alleged forced-labor violations stemming from working conditions at the DCM residence. Id. Counsel, Chammas says, did not inform him of this until mid-September 2016. Id. ¶ 37. Chammas implies that had he known earlier that his wife was no longer a target of the forced-labor investigation, he would not have pleaded guilty.

This argument is unavailing. Regardless of whether counsel delayed in apprising Chammas of the government's decision to drop the forced-labor investigation into his wife—and nothing in the record suggests he did—Chammas was clearly aware of the decision when he chose to accept the plea agreement. As he explains in his motion, counsel informed him in mid-September 2016 that the government did not intend to pursue an investigation or prosecution of his wife. Id. ¶¶ 37–38. And yet, he still pleaded guilty on October 12, 2016. See Oct. 12, 2016 Minute Entry. Accordingly, without reaching whether counsel performed deficiently, there is no

10

basis for the Court to conclude that Chammas was prejudiced by the alleged delay between the government's decision to drop the charges against his wife and when Chammas learned that information. See Bertram, 209 F. Supp. 3d at 257 (concluding that defendant failed to show prejudice for counsel's alleged failure to investigate where "the evidence defendant now says would have altered the outcome was information that was well known to him at the time he entered his plea").

*4. Failure to advise Chammas of the collateral consequences of the plea*

Fourth, Chammas argues that counsel performed deficiently because he failed to warn Chammas of the "collateral consequences" of accepting the plea. Mot. ¶ 41 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). To support this claim, he cites to the American Bar Association ("ABA") standards of practice, which explain that defense counsel should advise the client of the "collateral consequences that may arise from the charge, plea or conviction." Id. ¶ 41 (quoting ABA Standard 4-5.4). Chammas says he was in the dark about two collateral consequences of his guilty plea: negative media attention and adverse financial consequences, including losing his credit cards and home and auto insurance, and being denied a home equity loan. Id. ¶¶ 43–44.

The Court doubts that these consequences—which are to some extent self-evident—are of the kind contemplated by either the ABA Standards or Padilla. As the government suggests, the Sixth Amendment duty to warn likely applies only to severe legal, not personal, consequences. Rather than decide whether counsel performed deficiently in this respect, however, the Court will follow the approach taken by the Supreme Court in Hill v. Lockhart, 474 U.S. 52 (1985). In that case, the petitioner argued that his counsel performed deficiently by giving him incorrect advice about when he would be eligible for parole. Id. at 60. The Supreme

Court found "it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective" because the petitioner "did not allege . . . that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." Id. Here, Chammas asserts in conclusory terms that he "suffered harm as a result" of counsel's purported failure to warn. Mot. ¶ 45. But even if counsel did not apprise him of the financial and publicity-related consequences of accepting his plea, Chammas's assertion comes nowhere close to proving by a preponderance of the evidence that, armed with this knowledge, he would not have pleaded guilty and would have instead insisted on proceeding to trial. Accordingly, the Court will deny his § 2255 motion on this ground as well.

     5. *Likelihood of probation*

Chammas also argues that counsel performed deficiently by assuring him that "a very likely outcome at sentencing would be probation." Mot. ¶ 87. Counsel did not tell him, Chammas says, that "because the applicable sentencing guideline range placed [him] in Zone D of the Sentencing Table, [he] was ineligible for probation." Id. ¶ 89. He asserts that "these assurances are a major reason why the plea deal was accepted by [him] in the first place." Id. ¶ 87; see id. ¶ 91 ("But for this false counseling, Movant would not have accepted the plea deal with the prosecution.").

Chammas's representations are directly contradicted by the contents of the plea agreement and his own statements under oath at the Rule 11 colloquy. In the plea agreement, the parties agreed that because the Guidelines range for Chammas's conduct would exceed the maximum statutory penalty for abusive sexual contact, a Guidelines-compliant sentence would be 36 months. See Plea Agreement at 40 n.1. The parties also agreed that Chammas could seek

12

a sentence below 36 months based on the 18 U.S.C. § 3553(a) factors but that he would not ask for a sentence of less than one year and a day incarceration. Id. at 41. Chammas's counsel confirmed at the plea hearing that Chammas "has agreed that, at sentencing, he will not affirmatively ask for a sentence less than one year and a day, which falls within the statutory period prescribed by the Court." Plea Hr'g at 140:6–13. Finally, at the plea hearing, Chammas swore to the Court that no one had promised him what sentence the Court would impose. Id. at 141:1–3. "'[T]he representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding' and the defendant's 'declarations in open court carry a strong presumption of verity.'" United States v. Farley, 72 F.3d 158, 163 (D.C. Cir. 1995) (alterations in original) (quoting Blackledge, 431 U.S. at 73–74); see also United States v. Taylor, 254 F. Supp. 3d 145, 157 (D.D.C. 2017) ("The defendant's own statements at the time of his plea about fully understanding the plea agreement and its consequences, as well as the findings of the sentencing judge, far outweigh the defendant's bare assertions now to the contrary."). Thus, based on the language of the plea agreement and his confirmation at the plea hearing, Chammas unquestionably knew that he could not request a probationary sentence or a sentence of less than one year and one day incarceration. With that knowledge, Chammas could hardly have been surprised that the Court sentenced him within the range contemplated by his plea agreement.

Moreover, when determining whether there is a reasonable probability that the defendant would have gone to trial for purposes of prejudice, a court considers "not only the count to which the defendant pled guilty, but also the other counts he would have faced had he gone to trial." In re Sealed Case, 488 F.3d 1011, 1017 (D.C. Cir. 2007) (citing United States v. McCoy, 215 F.3d 102, 106–07 (D.C. Cir. 2000)). Had Chammas refused a plea and proceeded to trial, he could

13

have been charged with aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1), exposing him to a term of years up to life imprisonment and a Guidelines sentence of at least 108 to 135 months of incarceration. The severity of Chammas's potential trial exposure leads the Court to conclude that, contrary to his bare representations in the § 2255 motion, he almost certainly would have pleaded to the lesser charge regardless of what defense counsel may have advised him about the Court's likely sentence.

      6. *Failure to inform Chammas of a previous plea offer*

In the supplement to his § 2255 motion, Chammas argues that his counsel performed deficiently by rejecting a previous plea offer regarding the government's forced-labor investigation without first informing Chammas of the offer. Suppl. Mot. at 1. To support this claim, Chammas relies on a December 8, 2014 notation in counsel's files which reads, "Meeting between counsel for L Chammas and US DOJ / DOS rejecting forced labor plea offer." Id. at 5. Chammas contends that had counsel communicated the offer to him, he "would have considered and may have accepted this prior plea offer." Id.

The documents attached to the government's opposition to Chammas's supplemental motion illuminate the history of plea negotiations in the case. They show that in October 2013, the government extended an offer to Mr. Chammas to plead guilty to one count of abusive sexual contact in violation of 18 U.S.C. § 2244(b) (aggravated sexual contact in other circumstances), which carries a maximum sentence of two years imprisonment. See Oct. 22, 2013 Plea Letter at 66; Oct. 22, 2013 Plea Offer at 67–71.[3] According to handwritten notes of a July 22, 2014

---

[3] In this section, the memorandum opinion cites to the documents attached to the government's supplemental response, see ECF No. 48, by title and Bates stamp number.

meeting with prosecutors attended by Chammas and his counsel, Chammas rejected that offer. See July 22, 2014 Notes at 16 (stating "pre-indictment offer rejected").

At that July 22, 2014 meeting, the parties apparently discussed an alternative resolution: a plea to participating in forced labor, with "no sex charge, no registration." See id. at 18. That idea was formalized some six weeks later in a September 5, 2014 plea letter to Chammas's counsel. The letter proposes a plea to one count of forced labor in violation of 18 U.S.C. § 1589(a), which carries a maximum 20-year sentence if the offense involved an attempt to commit aggravated sexual abuse. See Sept. 5, 2014 Plea Offer at 26. The proposed plea agreement calculated the base offense level under the Sentencing Guidelines as "at least 30." Id. at 28. In a separate cover letter, the government explained that the forced-labor plea offer was contingent upon *Ms*. Chammas entering a non-prosecution agreement with the government and agreeing not to accept any future employment requiring a classified security clearance. Sept. 4, 2014 Letter at 37.

The documents further reveal that Chammas and his wife met with their respective attorneys to discuss the conditional forced-labor plea offer, see Sept. 12, 2014 Notes at 52–53, and that Chammas later informed his counsel that Ms. Chammas "said NO" to the non-prosecution agreement, see Sept. 30, 2014 Notes at 64. As of the end of September 2014, then, Mr. Chammas's forced-labor plea offer appears to have been off the table because Ms. Chammas apparently was unwilling to forego her security clearance.

As noted above, an entry appears in defense counsel's records indicating a December 8, 2014 meeting between Chammas's counsel and the government "rejecting the forced labor plea offer." The government suggests that the notation refers to September 5, 2014 offer described above. That makes some sense: There are no other formal forced-labor offers reflected in the

15

record before the Court and correspondence between Chammas and his counsel just prior to the December 8th meeting could be read to reflect a strategy of returning the plea discussions to the sex-related charge. See Dec. 4, 2014 Email from L. Chammas at 15 (noting counsel's plans to ask the government to "drop the labor charge and discuss the 'other' change"). If the government is correct that the December 8th entry refers to the September 5th plea offer, then it is beyond doubt that Mr. Chammas was fully informed of that offer and counsel's performance was not deficient. It would be equally clear that Chammas was not prejudiced, even if for some reason he was unaware of the offer. After all, the September 5th forced-labor offer carried much more exposure—up to 20 years in prison—than the one he ultimately accepted. Chammas himself does not unambiguously assert that would have accepted the more punitive offer.

Still, there remains at least some uncertainty in the Court's mind as to whether there could have been an intervening forced-labor plea offer between late September 2014—when the conditional offer expired because Ms. Chammas did not accept the non-prosecution agreement—and the apparent rejection of the offer at the December 8th meeting. To resolve that lingering uncertainty, the Court will defer a definitive ruling on this issue and direct the government to submit an affidavit from a knowledgeable member of the prosecution team attesting to whether a later offer was extended and, if so, the contents of the offer.

      *7. Failures relating to Chammas's medical conditions*

Chammas next argues that counsel provided ineffective representation at sentencing by failing to advocate for a lower sentence or a favorable prison placement due to Chammas's medical conditions. He alleges three specific deficiencies.

First, Chammas complains that counsel failed to request a downward departure pursuant to U.S.S.G. § 5H1.4 based on Chammas's poor health. Although counsel mentioned Chammas's

16

physical and medical needs, Chammas says he "did not outline [them] with any specificity" or "request that the Court consider a downward departure because of them." Mot. ¶ 61.

Under the performance prong of Strickland, "[w]here sentencing benefits are available under existing law, [the D.C. Circuit] has concluded that counsel is ineffective when he fails to advocate on his client's behalf at sentencing." Abney, 812 F.3d at 1089. This, however, is not a case where counsel failed to advocate on behalf of Chammas at sentencing. Although counsel did not request a *departure* under § 5H1.4, he identified Chammas's medical issues in his sentencing memorandum as justification for a downward *variance* from the Guidelines sentence under 18 U.S.C. § 3553(a). Specifically, counsel detailed Chammas's history of "serious health conditions," including contracting hepatitis in the 1980s, surviving liver cancer, having a liver transplant in 2008, and subsequently suffering from high blood pressure which causes heart palpitations and fainting spells. Def.'s Sentencing Mem. at 84–85. And, in advocating for a below-Guidelines sentence under § 3553(a), counsel urged the Court to "carefully consider Mr. Chammas's age and health in fashioning a sentence. Given his liver transplant, heart and hip conditions, and the array of medications and treatment he requires, a lengthy period of incarceration is both unnecessarily harsh and expensive for the federal government." Id. at 93. Counsel concluded by highlighting a recent report by the Department of Justice Office of the Inspector General that criticized the Bureau of Prisons for its handling of older inmates like Chammas. Id.

Counsel raised Chammas's health issues before the Court on other occasions as well, including at the plea hearing and in his post-plea memorandum requesting release pending sentencing. See Plea Hr'g Tr. at 146:22–23 (pointing to Chammas's "very significant medical conditions, including a liver transplant," as a reason why he should not be detained pending

17

sentencing); Def.'s Mem. in Supp. of Release Pending Sentencing at 57 (explaining that "Chammas has a number of serious medical conditions, including a liver transplant . . . and a compromised immune system," "need of a hip replacement," and "chronic heart condition").

The Court was well aware of "the medical issues raised by the defense" and specifically asked the government to address them at the sentencing hearing. Sentencing Hr'g Tr. at 169:3–5. And, when it was time for defense counsel to speak, he emphasized that "any sentence of jail that's imposed by the Court, as the Court has already mentioned, will pose challenges given his heart, liver, and hip issues." Id. at 175:8–10.

In short, the record is clear that counsel *did* advocate for a variance based on Chammas's detailed medical history. Moreover, the Court "recognize[d] that [Chammas's] age and health conditions pose some challenges," which it considered in imposing a below-Guidelines sentence. Id. at 177:17–18. Thus, the record is also clear that even if counsel had performed deficiently, Chammas has not shown a reasonable probability of a lower sentence.

Second, Chammas argues that counsel performed deficiently by failing to object when the prosecution described Chammas "as being in peak physical fitness" and noted that he was "on the way to the gym at the time of his arrest," and that his daughter had described him as "full of energy." Mot. ¶ 57. This argument finds no support in the record. The prosecutor did not describe Chammas as being in peak physical fitness; in fact, she did not dispute Chammas's medical history. Sentencing Hr'g at 169:6–11. And, as both the prosecution and defense pointed out, Chammas's daughter *did* describe him as "full of energy." Dec. 1, 2016 I. Chammas Letter to the Court at 103; Sentencing Hr'g at 169:15; Def.'s Sentencing Mem. at 89. Accordingly, counsel did not perform deficiently in this regard because he had no basis on which to object to the prosecutor's statements.

18

And third, Chammas suggests that counsel failed to research the best Bureau of Prisons ("BOP") facility to recommend to the Court at sentencing. Mot. ¶ 62. This claim easily fails on both prongs. Counsel reasonably deferred to Chammas's cardiologist regarding the BOP facility that could best care for Chammas's unique medical issues. Indeed, Chammas concedes that his cardiologist contacted BOP "to relay [Chammas's] conditions and needs." Id. Nor can he show prejudice: Chammas also concedes that after his doctor contacted BOP, he was placed in a facility that is "well-known as having one of the best medical facilities of all federal prisons in the nation." Id. ¶ 64.

8. *Failure to object to offense level calculation*

Chammas contends that counsel failed to object to what he views as a miscalculation of the offense level under the Guidelines. Mot. ¶ 80. He argues that the final Presentence Report improperly added four additional points to his offense level based "on the faulty presumption that the 'offense involved conduct described in 18 U.S.C. § 2241(a).'" Id. ¶ 83. However, Chammas overlooks that this enhancement was part of the plea agreement. See Plea Agreement at 39. As such, counsel was not objectively unreasonable in not objecting to it. Moreover, as the parties agreed and as Chammas admitted in the Statement of Offense, Chammas did use force on at least five occasions when he tried to force his penis into the victim's mouth even though she turned her head and pressed her mouth closed. The offense level enhancement under § 2A3.4(c)(1) based on conduct described in 18 U.S.C. § 2251(a) was correct.

C. Discovery requests

Finally, Chammas claims that his former counsel has not honored his request to provide his entire case file. He seeks an order requiring disclosure of that file, as well as all discovery materials in the government's possession and a transcript of the grand jury proceedings. Mot.

19

¶¶ 94–95; Suppl. Mot. at 3. More specifically, he seeks all communications between his former counsel and government counsel and "notes, memos, and interviews" conducted by State Department agents related to any pending claim. Suppl. Mot. at 3. And he seeks grand jury transcripts "to assess additional inconsistencies between witness statements." Id.

The Court may, in its discretion, grant a § 2255 petitioner discovery upon a showing of "good cause." Bracy v. Gramley, 520 U.S. 899, 904 (1997) (quoting Rule 6(a) Governing § 2255 Cases). Chammas fails to make the required showing. As discussed above, with the exception of the plea disclosure issue, Chammas's lack of entitlement to relief is abundantly clear based on the law and the existing record. Chammas has not explained how production of the requested records would alter that conclusion. Because he fails to demonstrate good cause, the Court will deny Chammas's request for leave to conduct discovery.

### III. Conclusion

For the foregoing reasons, the Court will deny Defendant's request for reassignment and his initial § 2255 motion to vacate his conviction and sentence. The Court will defer ruling on Defendant's supplemental § 2255 motion pending review of an affidavit from the government. A separate Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: December 19, 2018